1   William L. Thorpe (No. 005641)
    Jamie Gill Santos (No. 026251)
2   **THORPE SHWER, P.C.**
    3200 N. Central Ave., Ste. 1560
3   Phoenix, Arizona 85012
    Telephone: (602) 682-6100
4   Email: docket@thorpeshwer.com
    Email: wthorpe@thorpeshwer.com
5   Email: jsantos@thorpeshwer.com

6   Barry I. Levy (to be admitted *pro hac vice*)
    Max Gershenoff (to be admitted *pro hac vice*)
7   Steven Henesy (to be admitted *pro hac vice*)
    Michael Vanunu (to be admitted *pro hac vice*)
8   RIVKIN RADLER, LLP
    926 RXR Plaza
9   Uniondale, New York 11556
    (516) 357-3000
10
    *Counsel for Plaintiffs Government Employees Insurance Co.,*
11  *GEICO Indemnity Co., GEICO General Insurance Co., and*
    *GEICO Casualty Co.*
12

13              **UNITED STATES DISTRICT COURT**

14              **DISTRICT OF ARIZONA**

15
    Government Employees Insurance Co.,          NO.
16  GEICO Indemnity Co., GEICO General
    Insurance  Company and GEICO
17  Casualty Co.,                                **COMPLAINT**

18
19                          Plaintiffs,          (Assigned to the Hon. _____)

20  v.

21  808 Auto Glass, L.L.C., Jesse Pacheco,
    A&E Solheim, L.L.C. d/b/a A&E Auto
22  Glass,   Eric A. Solheim, Anna M.
    Solheim, Lightning Capital, L.L.C., and
23  Nicholas Minard,

24                          Defendants.
25

26                    **COMPLAINT**

27      Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO

28  General Insurance Company and GEICO Casualty Co. (collectively "GEICO" or

9121674

THORPE SHWER, P.C.

"Plaintiffs"), as and for their Complaint against the Defendants, hereby allege as follows:

## INTRODUCTION

1.    This action seeks to terminate an ongoing fraudulent scheme committed against GEICO and to recover more than $100,000.00 that the Defendants have improperly obtained  from GEICO through the submission of hundreds of fraudulent or otherwise non-reimbursable insurance claims seeking reimbursement for: (i) windshield replacement services (the "Glass Services"); and (ii) the installation and use of windshield parts – including moldings, clips, and fasteners – attendant to the windshield replacements (the "Glass Parts") allegedly provided to individuals ("Insureds") who were eligible for glass repair/replacement coverage under comprehensive automobile insurance policies issued by GEICO.

2.    In addition to money damages, GEICO seeks a declaration that it is not legally obligated to pay reimbursement of more than $160,000.00 in outstanding claims for Glass Services and Glass Parts that have been submitted or caused to be submitted by the Defendants through Defendant 808 Auto Glass, L.L.C. ("808 Auto Glass"), because the claims were:

(i)    fraudulent, in that they involved charges for illusory Glass Services and Glass Parts that were never performed and/or provided in the first instance;

(ii)    fraudulent, in that they were submitted through 808 Auto Glass, which never actually provided the Glass Services and Glass Parts, never obtained assignments of insurance benefits from the Insureds, and was ineligible to seek reimbursement from GEICO for the claims in the first instance; and

(iii)    submitted in violation of contractual agreements between GEICO and Defendants Eric A. Solheim ("E. Solheim"), Anna M. Solheim ("A. Solheim"), A&E Solheim, L.L.C. d/b/a A&E Auto Glass ("A&E Auto Glass") (collectively, the "A&E Defendants").

3.    GEICO also seeks injunctive relief, in the form of a permanent injunction, enjoining the A&E Defendants and all persons acting on behalf of or in concert with the A&E Defendants from violating the terms of a Stipulation and Settlement Agreement between GEICO and the A&E Defendants executed in connection with the prosecution and/or resolution of the action entitled <u>Government Employees Insurance Co., et al. v.</u>

2

9121674

A&E Solheim, LLC d/b/a A&E Auto Glass, et al., Docket No.: 2:19-cv-1492-SRB (the "A&E Auto Glass Action"). More specifically, the terms of the Stipulation and Settlement Agreement prohibited, in substance, the A&E Defendants from: (i) performing or providing Glass Services or Glass Parts to GEICO's Insureds; and (ii) billing GEICO – directly or indirectly – for Glass Services or Glass Parts.

4.      As more fully described in this Complaint, the Defendants engineered a scheme to create the appearance that 808 Auto Glass performed legitimate Glass Services and provided legitimate Glass Parts to Insureds in order to submit invoices to GEICO for payment under the Insureds' motor vehicle insurance policies. In reality, the Glass Services and Glass Parts were secretly provided – to the extent they were provided at all – through A&E Auto Glass and its employees in circumvention and violation of specific contractual agreements with GEICO, but were fraudulently billed through 808 Auto Glass, despite the fact that 808 Auto Glass: (i) never provided the Glass Services and Glass Parts in the first instance; and (ii) was ineligible and otherwise lacked standing to seek reimbursement from GEICO for the claims.

5.      The Defendants fall into the following categories:

(i)      Defendant 808 Auto Glass is an Arizona limited liability company that was used by the Defendants as a vehicle to submit fraudulent billing to GEICO for Glass Services and Glass Parts.

(ii)     Defendant Jesse Pacheco ("Pacheco") purports to be sole member and operator of 808 Auto Glass, and conspired with the other Defendants to use 808 Auto Glass as a vehicle to submit fraudulent billing to GEICO for Glass Services and Glass Parts.

(iii)    Defendant A&E Auto Glass is an Arizona limited liability company through which the Glass Services and Glass Parts were secretly provided, to the extent they were provided at all.

(iv)     Defendants E. Solheim and A. Solheim are the operators and sole members of A&E Auto Glass, and conspired with the other Defendants to use 808 Auto Glass as a vehicle to submit fraudulent billing to GEICO for Glass Services and Glass Parts that actually were provided, to the extent they were provided at all, through A&E Auto Glass.

(v)      Defendant Lightning Capital is an Arizona limited liability company that purported to be a third-party business funding company, and was used by the Defendants to facilitate the use of 808 Auto Glass as a vehicle to submit

THORPE SHWER, P.C.

THORPE SHWER, P.C.

fraudulent billing to GEICO for Glass Services and Glass Parts that actually were provided, to the extent they were provided at all, through A&E Auto Glass.

(vi)     Defendant Nicholas Minard ("Minard" and, together with Lightning Capital, the "Lightning Capital Defendants") was the managing member of Lightning Capital, and conspired with the other Defendants to use 808 Auto Glass as a vehicle to submit fraudulent billing to GEICO for Glass Services and Glass Parts that actually were provided, to the extent they were provided at all, through A&E Auto Glass.

6.     As discussed below, the Defendants at all relevant times have known that the charges for the Glass Services and Glass Parts that they submitted, or caused to be submitted, to GEICO were not entitled to reimbursement because they were:

(i)     fraudulent, in that they involved charges for illusory Glass Services and Glass Parts that were never performed and/or provided in the first instance;

(ii)     fraudulent, in that they were submitted through 808 Auto Glass, which never actually provided the Glass Services and Glass Parts, virtually never obtained assignments of insurance benefits from the Insureds, and was ineligible to seek reimbursement from GEICO for the claims in the first instance; and

(iii)     submitted in violation of specific contractual agreements between GEICO and the A&E Defendants.

7.     As such, the Defendants do not now have – and never had – any right to be compensated for the Glass Services and Glass Parts that they billed through 808 Auto Glass to GEICO.

8.     The chart annexed hereto as Exhibit "1" sets forth a representative sample of the fraudulent claims that have been identified to-date that the Defendants submitted, or caused to be submitted, to GEICO by means of wire transmission in interstate commerce.

9.     The Defendants' fraudulent scheme began in 2019 and continues uninterrupted through the present day.

10.     As a result of the Defendants' scheme, GEICO has incurred damages of more than $100,000.00.

. . .

9121674

# THE PARTIES

## I.     Plaintiffs

11.     Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. are each Maryland corporations with their principal places of business in Chevy Chase, Maryland. GEICO is authorized to conduct business and to issue automobile insurance policies in the state of Arizona.

## II.    Defendants

12.     Defendant 808 Auto Glass is an Arizona limited liability company. 808 Auto Glass had Pacheco as its sole manager and member, and was used by the Defendants as a vehicle to submit hundreds of fraudulent or otherwise non-reimbursable claims to GEICO.

13.     Defendant Pacheco resides in and is a citizen of Arizona. Pacheco purported to serve as 808 Auto Glass' sole manager and member, and conspired with the other Defendants to use 808 Auto Glass as a vehicle to submit hundreds of fraudulent or otherwise non-reimbursable claims to GEICO.

14.     Defendant A&E Auto Glass is an Arizona limited liability company.  E. Solheim and A. Solheim were the sole members and managers of A&E Auto Glass. A&E Auto Glass was used by E. Solheim and A. Solheim to secretly provide – to the extent they were provided at all – the Glass Services and Glass Parts to GEICO Insureds, and conspired with the other Defendants to fraudulently bill GEICO for the Glass Services and Glass Parts through 808 Auto Glass.

15.     Defendant E. Solheim resides in and is a citizen of Arizona. E. Solheim, together with A. Solheim, owned and operated A&E Auto Glass, used A&E Auto Glass to secretly provide – to the extent they were provided at all – the Glass Services and Glass Parts to GEICO Insureds, and conspired with the other Defendants to fraudulently bill GEICO for the Glass Services and Glass Parts through 808 Auto Glass.

THORPE SHWER, P.C.

5

9121674

16.     Defendant A. Solheim resides in and is a citizen of Arizona. A. Solheim, together with E. Solheim, owned and operated A&E Auto Glass, used A&E Auto Glass to secretly provide – to the extent they were provided at all – the Glass Services and Glass Parts to GEICO Insureds, and conspired with the other Defendants to fraudulently bill GEICO for the Glass Services and Glass Parts through 808 Auto Glass.

17.     Defendant Lightning Capital is an Arizona limited liability company. Lightning Capital was organized in Arizona on or about March 8, 2010, had Minard as its managing member, and was used by the Defendants to facilitate the use of 808 Auto Glass as a vehicle to submit fraudulent billing to GEICO seeking payment for the Glass Services and Glass Parts that were secretly provided, to the extent they were provided at all, through A&E Auto Glass.

18.     Defendant Minard resides in and is a citizen of Arizona. Minard served as manager and a member of Lightning Capital, and conspired with the other Defendants to use 808 Auto Glass as a vehicle to submit fraudulent billing to GEICO seeking payment for the Glass Services and Glass Parts that were secretly provided, to the extent they were provided at all, through A&E Auto Glass.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states. Pursuant to 28 U.S.C. §1331, this Court also has jurisdiction over the claims brought under 18 U.S.C. §§1961 et seq. (the Racketeer Influenced and Corrupt Organizations ("RICO") Act)) because they arise under the laws of the United States.  In addition, this Court has supplemental jurisdiction over the subject matter of the claims asserted in this action pursuant to 28 U.S.C. §1367.

20.     Venue in this District is appropriate pursuant to 28 U.S.C. §1391, as the District of Arizona is the District (i) where one or more of the Defendants reside, and (ii) a substantial amount of the activities forming the basis of the Complaint occurred.

THORPE SHWER, P.C.

9121674

## ALLEGATIONS COMMON TO ALL CLAIMS

I.     **Automobile Insurance and Reimbursement for Glass Services and Glass Parts**

21.    Though comprehensive insurance coverage is not required, a large percentage of Arizona automobile owners carry comprehensive insurance coverage. By law, any insurer who provides comprehensive coverage for a motor vehicle is required to provide the Insured with an option to cover the repair or replacement of damage to any safety equipment, which includes windshields. See A.R.S. § 20-264.

22.    In the event of damage to the windshield of a vehicle with comprehensive insurance coverage, Arizona law requires insurers to replace or repair the damaged windshield without application of a deductible. See A.R.S. § 20-264.

23.    An Insured can assign his or her right to complete safety equipment coverage benefits – i.e., coverage for windshield repair or replacement – to his/her preferred windshield repair/replacement shop in exchange for the shop's performance of the repair or replacement services.

24.    Then, pursuant to an assignment of benefits given by the Insured to the shop, the shop can perform the work, and submit its invoice for the repair or replacement, together with the work order number, directly to GEICO for payment.  The submission is made using an electronic billing or facsimile transmission system in which the shop's invoice and supporting documents is transmitted to GEICO via interstate wire transfer to its' third-party administrator located in Columbus, Ohio.

25.    Thus, in order to have standing to seek reimbursement directly from an insurer such as GEICO, the glass shop must have a valid assignment of benefits from the Insured.    25.    Arizona law generally permits automobile insurers such as GEICO only thirty (30) days from their receipt to handle a claim seeking payment for windshield repair and/or replacement. See, e.g., A.R.S. § 20-462(A).  If insurers such as GEICO do not pay the claim within 30 days, or present some good reason for denying or investigating the claim, they can be liable to the Insured or the Insured's assignee for

9121674

interest at the legal rate from the date the claim is received. See id.   While the 30-day claims handling period helps to ensure that legitimate claims are paid in a timely manner, it also creates perverse incentives for glass shops to engage in fraudulent practices, such as those  employed by the Defendants.

26.     GEICO receives hundreds of windshield repair or replacement claims from Arizona Insureds and shops on a daily basis.

27.     Upon information and belief, other Arizona automobile insurers similarly receive a very high volume of windshield repair and replacement claims each day.

28.     Glass shops that engage in the types of fraudulent practices employed by the Defendants depend upon the volume of windshield repair and replacement claims, coupled with the limited amount of time in which insurers have to handle those claims, to shield their fraudulent activity from timely discovery.

29.     In response to fraudulent windshield repair and replacement practices within Arizona, the legislature amended the Unfair Practices and Frauds Article of Arizona's Insurance Statutes to specifically identify and criminalize unlawful auto glass repair practices. See A.R.S. §§ 20-463.01; 20-466.01.

30.     In particular, Section 20-463.01 was amended, effective July 29, 2010, to specifically criminalize specific practices by the auto glass industry. See AZ House Committee Minutes, February 1, 2010, noting that "the bill contains a list of the most common fraudulent practices by the auto glass industry."

31.     Specifically, Arizona Statute § 20-463.01(A)(1) provides that it is an unlawful practice for a person who sells or repairs auto glass to knowingly submit a false claim to an insurer for auto glass repair or replacement or for related services if: (i) the services were not provided; (ii) the services were not authorized in writing by the owner or lessee of the vehicle; and/or (iii) the price of the proposed repairs/replacement was misrepresented to the policy holder.

32.     In Arizona, the submission of a claim seeking insurance reimbursement that is based in part on a fraudulent misrepresentation renders the entire claim fraudulent and

8

non-reimbursable.

33.    Moreover, under Arizona law, an unincorporated or unorganized entity is ineligible to: (i) conduct business in Arizona; and/or (ii) collect on claims for insurance reimbursement.

34.    By extension, insurers such as GEICO are not obligated pay claims submitted by or through a putative entity that is not eligible to conduct business or submit insurance claims in Arizona.

## II.    The Defendants' Fraudulent Scheme

### A.    The A&E Auto Glass Action

35.    On March 4, 2019, GEICO commenced a federal/state racketeering lawsuit in the United States District Court for the District of Arizona (the "A&E Auto Glass Action") against the A&E Defendants.

36.    In the A&E Auto Glass Action, GEICO alleged that the A. Solheim and E. Solheim had used A&E Auto Glass as a vehicle to submit thousands of fraudulent insurance claims to GEICO and other insurers for substantially the same types of Glass Services and Glass Parts that also are at issue in this Action.

37.    In particular, GEICO alleged that A. Solheim and E. Solheim had used A&E Auto Glass to submit thousands of claims to GEICO that were fraudulent and non-reimbursable because, among other things, they involved charges for illusory Glass Services and Glass Parts that were never provided in the first instance.

38.    Solely by way of example, the Complaint in the A&E Auto Glass Action identified numerous claim-specific examples of instances in which the A&E Defendants had generated two separate invoices in connection with a single service call. The invoice provided to the Insured would include only those services which the A&E Defendants were authorized to provide by the Insured. However, the second invoice generated by the A&E Defendants was submitted to GEICO and included additional services that had: (i) never been performed; and (ii) were not authorized by the Insured.

THORPE SHWER, P.C.

9121674

THORPE SHWER, P.C.

39.     The A&E Defendants answered GEICO's Complaint in the A&E Auto Glass Action on April 1, 2019. Because answering GEICO's allegations truthfully would have required the Solheims to admit all of GEICO's substantive allegations – and therefore would have required the Solheims to incriminate themselves – the Solheims invoked the Fifth Amendment privilege against self-incrimination in response to all of GEICO's substantive allegations in the A&E Auto Glass Action.

40.     During the pendency of the A&E Auto Glass Action, on April 19, 2019, the A&E Defendants entered into a stipulation with GEICO (the "A&E Stipulation") whereby the A&E Defendants agreed that, as of April 19, 2019, they would not: (i) provide any auto glass repair/replacement services on any motor vehicles that are insured by GEICO; (ii) submit any invoices to GEICO for auto glass repair/replacement services for services purportedly provided prior to April 19, 2019; (iii) refer Insureds to other auto glass repair shop owned or controlled by E. Solheim, A. Solheim, or their family members; or (iv) receive any direct or indirect economic benefit from the referral of Insureds to other entities for auto glass repair/replacement services.

41.     Thereafter, on July 5, 2019, the A&E Defendants and GEICO entered into a Settlement and Release Agreement in the A&E Auto Glass Action (the "A&E Settlement"). Pursuant to the A&E Settlement, A&E Auto Glass, E. Solheim, and A. Solheim agreed that the A&E Defendants, and any entity owned, managed, or controlled – directly or indirectly – by E. Solheim or A. Solheim, would not:

(i)     provide or cause to be provided to any vehicle insured by GEICO any goods and/or services, including but not limited to auto glass repair/replacement services;

(ii)    submit or cause to be submitted bills, claims, or requests for payment of any kind to GEICO, or commence or cause to be commenced any proceedings against GEICO for any goods and/or services, including but not limited to auto glass repair/replacement services;

(iii)   refer or cause to be referred any vehicle insured by GEICO that may require auto glass repair/replacement services to any individual and/or entity owned, controlled, or operated by the Solheims, any Solheim-related entity, or any entity in which the Solheims have a financial or ownership interest; and

9121674

(iv)    refer or cause to be referred any individual insured by GEICO who may require auto glass repair/replacement services to any individual or entity in exchange for any economic benefit paid to the Solheims, A&E Auto Glass, or any Solheim-related entity.

42.    As part of the A&E Settlement, the A&E Defendants also agreed to pay GEICO the sum of $150,000.00.  This represented a significant compromise of the A&E Defendants' liability to GEICO, which was close to $1 million, but which GEICO was willing to accept as part of a global resolution for, among other reasons, the restrictions described more fully in ¶41 above.

**B.    The Lightning Capital Funding Agreements and the Transition from A&E Auto   Glass to 808 Auto Glass**

43.    Prior to the events giving rise to the A&E Auto Glass Action, the A&E Defendants and the Lightning Capital Defendants entered into an invoice funding agreement, whereby Lightning Capital purchased future accounts receivable from A&E Auto Glass (the "A&E Funding Agreement").

44.    Pursuant to the A&E Funding Agreement, once the A&E Defendants purportedly provided Glass Services or Glass Parts to a customer, a bill would be submitted to an automobile insurer in the name of A&E Auto Glass.

45.    Then, pursuant to the A&E Funding Agreement, Lightning Capital agreed to purchase the resulting A&E Auto Glass claim for a percentage of the face value of the claim.

46.    Pursuant to the A&E Funding Agreement, in the event that Lightning Capital did not recover payment from insurers such as GEICO within 90 days of Lightning Capital's funding of the claim, the A&E Defendants were obligated to re-purchase the claim back from Lightning Capital.

47.    As part of the A&E Settlement between the A&E Defendants and GEICO, the A&E Defendants agreed to release all outstanding and unpaid claims they had submitted to GEICO, totaling in excess of $600,000.00.

9121674

48.     However, pursuant to the A&E Funding Agreement, the A&E Defendants had previously sold their interest in this $600,000.00 in outstanding billing to Lightning Capital.

49.     Therefore, in order to facilitate their release of the $600,000.00 in pending billing, the A&E Defendants were required – under the terms of the A&E Funding Agreement – to "buy back" these claims from Lightning Capital.

50.     Prior to the A&E Auto Glass Action, the Lightning Capital Defendants derived significant economic benefit from the A&E Funding Agreement, as the agreement allowed the Lightning Capital Defendants to pay pennies on the dollar for thousands of fraudulent claims generated by the A&E Defendants.

51.     The Lightning Capital Defendants knew that the execution of the A&E Stipulation and the A&E Settlement stood as an obstacle to the Lightning Capital Defendants' ability to profit off of the A&E Defendants' fraudulent practices.

52.     In keeping with the fact that the Lightning Capital Defendants were aware of the restrictions put in place by the A&E Settlement, Minard executed an affidavit – in which he swore that Lightning Capital did not have any outstanding claims against GEICO – as part of the A&E Settlement.

53.     Therefore, the Lightning Capital Defendants conspired with the A&E Defendants to seek out a means through which they could circumvent the A&E Stipulation and the A&E Settlement by continuing to submit fraudulent billing to GEICO.

54.     Toward that end, in addition to their funding relationship with the A&E Defendants, the Lightning Capital Defendants entered into a funding agreement with Pacheco and 808 Auto Glass.

55.     Beginning in April 2019, the Lightning Capital Defendants began purchasing the accounts receivable that were generated through 808 Auto Glass' fraudulent billing for services that were provided – to the extent they were provided at all . . .

THORPE SHWER, P.C.

9121674

THORPE SHWER, P.C.

– by the A&E Defendants in violation of the A&E Stipulation and, eventually, the A&E Settlement.

56.     The Lightning Capital Defendants' participation was essential to the success of the Defendants' fraudulent scheme for numerous reasons.

57.     For example, both A&E Auto Glass and 808 Auto Glass advertised that they would pay "rebates" to Insureds in exchange for the Insureds permitting A&E Auto Glass and 808 Auto Glass to purport to provide Glass Services and Glass Parts.

58.     In particular, A&E Auto Glass and 808 Auto Glass represented and advertised that they would pay Insureds a cash rebate of $140.00 for each putative service call.

59.     In order to fund their ability to "front" $140.00 for each putative provision of Glass Services and Glass Parts, the A&E Defendants, 808 Auto Glass, and Pacheco required up-front funding from the Lightning Capital Defendants, who agreed to purchase the A&E Defendants, 808 Auto Glass, and Pacheco's fraudulent claims for a percentage of the face value.

60.     Once purchased, it was the Lightning Capital Defendants who ultimately submitted the fraudulent claims identified in Exhibit "1" to GEICO through 808 Auto Glass.

**C.     The Defendants' Circumvention and Breach of the A&E Stipulation and the A&E Settlement**

61.     As set forth above, following their execution of the A&E Stipulation and, ultimately, the A&E Settlement, the A&E Defendants agreed to be permanently precluded from providing or performing Glass Services or Glass Parts with respect to any vehicle insured by GEICO.

62.     By extension, the A&E Stipulation and the A&E Settlement precluded the Lightning Capital Defendants from profiting off of the fraudulent billing that was submitted through A&E Auto Glass to GEICO.

9121674

63. However, following the execution of the A&E Stipulation and, ultimately, the A&E Settlement, the A&E Defendants and the Lightning Capital Defendants secretly sought to perpetuate the fraudulent scheme they had carried out against GEICO prior to the filing of the A&E Auto Glass Action.

64. Therefore, the A&E Defendants sought out a means through which they could continue to purport to provide – and, more importantly, bill for – Glass Services and Glass Parts in connection with vehicles insured by GEICO.

65. In addition, the Lightning Capital Defendants sought to continue to profit off of the A&E Defendants' fraudulent practices.

66. Toward that end, the A&E Defendants and the Lightning Capital Defendants set out to recruit a glass shop/glass shop owner that would be willing to falsely represent that it had provided the Glass Services and Glass Part when, in reality, those putative services had secretly been provided through A&E Auto Glass, to the extent they were provided all.

67. However, the A&E Defendants and the Lightning Capital Defendants knew that no legitimate auto glass shop would permit them to facilitate the submission of fraudulent billing for services secretly provided – to the extent they were provided at all – through A&E Auto Glass in violation of the A&E Stipulation and the A&E Settlement.

68. Accordingly, the A&E Defendants and the Lightning Capital Defendants recruited Pacheco to use what was then an unauthorized purported glass shop, 808 Auto Glass, to submit fraudulent billing to GEICO for services secretly provided – to the extent they were provided at all –through A&E Auto Glass in violation of the A&E Stipulation and the A&E Settlement.

69. At the time, 808 Auto Glass was not an active/legitimate auto glass shop in the state of Arizona.

70. In keeping with the fact that 808 Auto Glass was not a legitimate glass shop, 808 Auto Glass did not have any of the hallmarks of a legitimate business. For

9121674

THORPE SHWER, P.C.

example, 808 Auto Glass did not have its own phone number, website, or social media presence.

71.     Moreover, and also in keeping with the fact that 808 Auto Glass was not a legitimate glass shop, 808 Auto Glass did not have a physical shop location.

72.     What is more, Pacheco did not cause 808 Auto Glass to be organized as an Arizona limited liability company until June 19, 2019 – two months after 808 Auto Glass first began to routinely submit fraudulent billing to GEICO.  In fact, Pacheco used a tax identification number on the claims submitted to GEICO that belonged to a company organized in Hawaii more than six (6) years ago.

73.     Pacheco previously resided in Hawaii, where he was mired in legal troubles, including several jail sentences and a conviction for criminal contempt of court.

74.     Moreover, Pacheco's previous financial troubles forced him, in 2012, to declare bankruptcy in Arizona.

75.     Upon information and belief, Pacheco was receptive to the A&E Defendants and the Lightning Capital Defendants' offer because his history of legal and financial troubles made it difficult for him to obtain legitimate, sufficiently-remunerative employment.

76.     Once the A&E Defendants and the Lightning Capital Defendants recruited Pacheco and 808 Auto Glass, the Defendants began to submit large volumes of fraudulent insurance claims to GEICO through 808 Auto Glass for services that were secretly provided, to the extent they were provided at all, by the A&E Defendants.

77.     Beginning in April 2019, the Defendants used 808 Auto Glass as the vehicle to submit their fraudulent billing for Glass Services and Glass Parts only in instances in which the A&E Defendants purported to provide Glass Services and Glass Parts to GEICO insureds.

78.     For example, between April 2019 and July 2019, across all major Arizona automobile insurers, the Defendants caused 808 Auto Glass to submit nearly 500 claims for Glass Services and Glass Parts.

THORPE SHWER, P.C.

9121674

THORPE SHWER, P.C.

79.    In keeping with the fact that 808 Auto Glass was used by the Defendants to circumvent the restrictions placed on the A&E Defendants and the Lightning Capital Defendants' ability to submit billing to GEICO, virtually every single one of the nearly 500 total claims submitted through 808 Auto Glass were submitted to GEICO.

80.    It is simply impossible that 808 Auto Glass only encountered potential customers who were insured by GEICO, and no other Arizona automobile insurers.

81.    In reality, in instances in which the A&E Defendants purported to provide Glass Services and Glass Parts to individuals insured by automobile insurers other than GEICO, the Defendants – unencumbered by either the A&E Stipulation or the A&E Settlement – continued to submit those claims through A&E Auto Glass.

82.    In keeping with the fact that 808 Auto Glass was used by the Defendants to circumvent the restrictions placed on the A&E Defendants and the Lightning Capital Defendants' ability to submit billing to GEICO, prior to the A&E Defendants' execution of the A&E Stipulation, 808 Auto Glass submitted only five total claims – between November 2018 and January 2019. Prior to these five claims, 808 Auto Glass had never billed GEICO for any goods or services.

83.    Moreover, and in keeping with the fact that 808 Auto Glass was not a legitimate glass shop, of the five claims submitted to GEICO by 808 Auto Glass prior to April 2019, four of them were for vehicles owned by Pacheco, 808 Auto Glass' putative owner.

84.    By contrast, after submitting a total of five claims prior to April 2019, between April 2019 and the present – not coincidentally, the time period immediately following the A&E Stipulation and the A&E Settlement, which prohibited the A&E Defendants from providing services to GEICO Insureds or billing GEICO at all – 808 Auto Glass submitted more than 400 claims for reimbursement to GEICO.

85.    In reality, the Defendants used 808 Auto Glass as a vehicle to submit fraudulent billing only in those instances in which they were presented with an

16

9121674

opportunity to bill for Glass Services and Glass Parts to vehicles insured by GEICO, in order to circumvent the restrictions in the A&E Stipulation and the A&E Settlement.

86.     Beginning in April 2019, when the A&E Defendants were presented with an opportunity to purport to provide Glass Services or Glass Parts to a GEICO Insured, the Glass Services and Glass Parts were provided – to the extent they were provided at all – through A&E Auto Glass, often at A&E Auto Glass' shop located at 1722 N. Banning Street, Suite 102, Mesa, Arizona.

87.     However, at the conclusion of the provision of the putative Glass Services and Glass Parts by A&E Auto Glass, the Defendants would then bill GEICO for the services through 808 Auto Glass, despite the fact that 808 Auto Glass had not provided the underlying services.

88.     In keeping with the fact that the underlying Glass Services and Glass Parts were secretly provided – to the extent they were provided at all – by the A&E Defendants, in some instances, the "rebate" checks issued to Insureds in connection with the Glass Services and Glass Parts were issued out of an A&E Auto Glass bank account, rather than an account held by 808 Auto Glass.

89.     What is more – and again, in keeping with the fact that the underlying Glass Services and Glass Parts were secretly provided, to the extent they were provided at all, by the A&E Defendants, the Glass Services and Glass Parts were provided by employees of A&E Auto Glass, rather than by employees of 808 Auto Glass.

90.     As set forth in Exhibit "1", between April 2019 and the present, the Defendants submitted hundreds of fraudulent claims to GEICO through 808 Auto Glass, all of which falsely represented that the underlying Glass Services and Glass Parts had been provided by 808 Auto Glass, when in fact they had been provided – to the extent they were provided at all – through A&E Auto Glass in violation of the A&E Stipulation and the A&E Settlement.

91.     For example:

. . .

THORPE SHWER, P.C.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

9121674

THORPE SHWER, P.C.

(i)    On May 13, 2019, an Insured named KK appeared at A&E Auto Glass' shop located in Mesa, Arizona for a windshield replacement on his GEICO-insured vehicle. The windshield replacement was performed – to the extent it was performed at all – by A&E Auto Glass. Even so, the Lightning Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass submitted a claim to GEICO for the windshield replacement through 808 Auto Glass, which falsely represented that 808 Auto Glass had provided the Glass Services, when the services were provided – to the extent they were provided at all – by A&E Auto Glass in violation of the A&E Stipulation.

(ii)   On May 15, 2019, an Insured named RV appeared at A&E Auto Glass' shop located in Mesa, Arizona for a windshield replacement on his GEICO-insured vehicle. The windshield replacement was performed – to the extent it was performed at all – by A&E Auto Glass. Even so, the Lightning Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass submitted a claim to GEICO for the windshield replacement through 808 Auto Glass, which falsely represented that 808 Auto Glass had provided the Glass Services, when the services were provided – to the extent they were provided at all – by A&E Auto Glass in violation of the A&E Stipulation.

(iii)  On May 17, 2019, an Insured named AB appeared at A&E Auto Glass' shop located in Mesa, Arizona for a windshield replacement on her GEICO-insured vehicle. The windshield replacement was performed – to the extent it was performed at all – by A&E Auto Glass. Even so, the Lightning Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass submitted a claim to GEICO for the windshield replacement through 808 Auto Glass, which falsely represented that 808 Auto Glass had provided the Glass Services, when the services were provided – to the extent they were provided at all – by A&E Auto Glass in violation of the A&E Stipulation.

(iv)   On May 17, 2019, an Insured named RG appeared at A&E Auto Glass' shop located in Mesa, Arizona for a windshield replacement on her GEICO-insured vehicle. The windshield replacement was performed – to the extent it was performed at all – by A&E Auto Glass. Even so, the Lightning Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass submitted a claim to GEICO for the windshield replacement through 808 Auto Glass, which falsely represented that 808 Auto Glass had provided the Glass Services, when the services were provided – to the extent they were provided at all – by A&E Auto Glass in violation of the A&E Stipulation.

(v)    On May 21, 2019, an Insured named EN appeared at A&E Auto Glass' shop located in Mesa, Arizona for a windshield replacement on her GEICO-insured vehicle. The windshield replacement was performed – to the extent it was performed at all – by A&E Auto Glass. Even so, the Lightning Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass submitted a claim to GEICO for the windshield replacement through 808 Auto Glass, which falsely represented that 808 Auto Glass had provided the Glass Services, when the services were provided – to the extent they were provided at all – by A&E Auto Glass in violation of the A&E Stipulation.

(vi)   On May 24, 2019, an Insured named MH appeared at A&E Auto Glass' shop located in Mesa, Arizona for a windshield replacement on his GEICO-

1   insured vehicle. The windshield replacement was performed – to the extent
    it was performed at all – by A&E Auto Glass. Even so, the Lightning
2   Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass
    submitted a claim to GEICO for the windshield replacement through 808
3   Auto Glass, which falsely represented that 808 Auto Glass had provided the
    Glass Services, when the services were provided – to the extent they were
4   provided at all – by A&E Auto Glass in violation of the A&E Stipulation.

5   (vii)   On May 24, 2019, an Insured named BC appeared at A&E Auto Glass'
            shop located in Mesa, Arizona for a windshield replacement on his GEICO-
6           insured vehicle. The windshield replacement was performed – to the extent
            it was performed at all – by A&E Auto Glass. Even so, the Lightning
7           Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass
            submitted a claim to GEICO for the windshield replacement through 808
8           Auto Glass, which falsely represented that 808 Auto Glass had provided the
            Glass Services, when the services were provided – to the extent they were
9           provided at all – by A&E Auto Glass in violation of the A&E Stipulation.

10  (viii)  On May 24, 2019, an Insured named DP appeared at A&E Auto Glass'
            shop located in Mesa, Arizona for a windshield replacement on his GEICO-
11          insured vehicle. The windshield replacement was performed – to the extent
            it was performed at all – by A&E Auto Glass. Even so, the Lightning
12          Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass
            submitted a claim to GEICO for the windshield replacement through 808
13          Auto Glass, which falsely represented that 808 Auto Glass had provided the
            Glass Services, when the services were provided – to the extent they were
14          provided at all – by A&E Auto Glass in violation of the A&E Stipulation.

15  (ix)    On May 28, 2019, an Insured named TG appeared at A&E Auto Glass'
            shop located in Mesa, Arizona for a windshield replacement on his GEICO-
16          insured vehicle. The windshield replacement was performed – to the extent
            it was performed at all – by A&E Auto Glass. Even so, the Lightning
17          Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass
            submitted a claim to GEICO for the windshield replacement through 808
18          Auto Glass, which falsely represented that 808 Auto Glass had provided the
            Glass Services, when the services were provided – to the extent they were
19          provided at all – by A&E Auto Glass in violation of the A&E Stipulation.

20  (x)     On May 28, 2019, an Insured named RM appeared at A&E Auto Glass'
            shop located in Mesa, Arizona for a windshield replacement on his GEICO-
21          insured vehicle. The windshield replacement was performed – to the extent
            it was performed at all – by A&E Auto Glass. Even so, the Lightning
22          Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass
            submitted a claim to GEICO for the windshield replacement through 808
23          Auto Glass, which falsely represented that 808 Auto Glass had provided the
            Glass Services, when the services were provided – to the extent they were
24          provided at all – by A&E Auto Glass in violation of the A&E Stipulation.

25  (xi)    On May 29, 2019, an Insured named TS appeared at A&E Auto Glass'
            shop located in Mesa, Arizona for a windshield replacement on his GEICO-
26          insured vehicle. The windshield replacement was performed – to the extent
            it was performed at all – by A&E Auto Glass. TS never spoke with anyone
27          associated with 808 Auto Glass, and never assigned his insurance benefits
            to 808 Auto Glass. Even so, Pacheco and 808 Auto Glass submitted a claim
28          to GEICO for the windshield replacement through 808 Auto Glass, which

THORPE SHWER, P.C.

falsely represented that 808 Auto Glass had provided the Glass Services, when the services were provided – to the extent they were provided at all – by A&E Auto Glass in violation of the A&E Stipulation.

(xii)   On May 29, 2019, an Insured named JB appeared at A&E Auto Glass' shop located in Mesa, Arizona for a windshield replacement on his GEICO-insured vehicle. The windshield replacement was performed – to the extent it was performed at all – by A&E Auto Glass. Even so, the Lightning Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass submitted a claim to GEICO for the windshield replacement through 808 Auto Glass, which falsely represented that 808 Auto Glass had provided the Glass Services, when the services were provided – to the extent they were provided at all – by A&E Auto Glass in violation of the A&E Stipulation.

(xiii)  On May 30, 2019, an Insured named BC appeared at A&E Auto Glass' shop located in Mesa, Arizona for a windshield replacement on his GEICO-insured vehicle. The windshield replacement was performed – to the extent it was performed at all – by A&E Auto Glass. Even so, the Lightning Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass submitted a claim to GEICO for the windshield replacement through 808 Auto Glass, which falsely represented that 808 Auto Glass had provided the Glass Services, when the services were provided – to the extent they were provided at all – by A&E Auto Glass in violation of the A&E Stipulation.

(xiv)   On May 30, 2019, an Insured named JK appeared at A&E Auto Glass' shop located in Mesa, Arizona for a windshield replacement on his GEICO-insured vehicle. The windshield replacement was performed – to the extent it was performed at all – by A&E Auto Glass. Even so, the Lightning Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass submitted a claim to GEICO for the windshield replacement through 808 Auto Glass, which falsely represented that 808 Auto Glass had provided the Glass Services, when the services were provided – to the extent they were provided at all – by A&E Auto Glass in violation of the A&E Stipulation.

(xv)    On June 26, 2019, an Insured named TW appeared at A&E Auto Glass' shop located in Mesa, Arizona for a windshield replacement on her GEICO-insured vehicle. The windshield replacement was performed – to the extent it was performed at all – by A&E Auto Glass. Even so, the Lightning Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass submitted a claim to GEICO for the windshield replacement through 808 Auto Glass, which falsely represented that 808 Auto Glass had provided the Glass Services, when the services were provided – to the extent they were provided at all – by A&E Auto Glass in violation of the A&E Stipulation.

(xvi)   On July 19, 2019, an Insured named AK appeared at the A&E Auto Glass shop located in Mesa, Arizona for a windshield replacement on her GEICO-insured vehicle. The windshield replacement was performed – to the extent it was performed at all – by A&E Auto Glass. Even so, the Lightning Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass submitted a claim to GEICO for the windshield replacement through 808 Auto Glass, which falsely represented that 808 Auto Glass had provided the Glass Services, when the services were provided – to the extent they were provided at all – by A&E Auto Glass in violation of the A&E Settlement.

THORPE SHWER, P.C.

9121674

THORPE SHWER, P.C.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(xvii)  On July 20, 2019, an Insured named BC appeared at the A&E Auto Glass shop located in Mesa, Arizona for a windshield replacement on his GEICO-insured vehicle. The windshield replacement was performed – to the extent it was performed at all – by A&E Auto Glass. Even so, the Lightning Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass submitted a claim to GEICO for the windshield replacement through 808 Auto Glass, which falsely represented that 808 Auto Glass had provided the Glass Services, when the services were provided – to the extent they were provided at all – by A&E Auto Glass in violation of the A&E Settlement.

(xviii)  On July 22, 2019, an Insured named JJ appeared at the A&E Auto Glass shop located in Mesa, Arizona for a windshield replacement on his GEICO-insured vehicle. The windshield replacement was performed – to the extent it was performed at all – by A&E Auto Glass. Even so, the Lightning Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass submitted a claim to GEICO for the windshield replacement through 808 Auto Glass, which falsely represented that 808 Auto Glass had provided the Glass Services, when the services were provided – to the extent they were provided at all – by A&E Auto Glass in violation of the A&E Settlement.

(xix)  On July 22, 2019, an Insured named WK appeared at the A&E Auto Glass shop located in Mesa, Arizona for a windshield replacement on his GEICO-insured vehicle. The windshield replacement was performed – to the extent it was performed at all – by A&E Auto Glass. Even so, the Lightning Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass submitted a claim to GEICO for the windshield replacement through 808 Auto Glass, which falsely represented that 808 Auto Glass had provided the Glass Services, when the services were provided – to the extent they were provided at all – by A&E Auto Glass in violation of the A&E Settlement.

(xx)  On July 24, 2019, an Insured named BB appeared at the A&E Auto Glass shop located in Mesa, Arizona for a windshield replacement on her GEICO-insured vehicle. The windshield replacement was performed – to the extent it was performed at all – by A&E Auto Glass. Even so, the Lightning Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass submitted a claim to GEICO for the windshield replacement through 808 Auto Glass, which falsely represented that 808 Auto Glass had provided the Glass Services, when the services were provided – to the extent they were provided at all – by A&E Auto Glass in violation of the A&E Settlement.

92.    These are only representative examples. In all of the claims identified in Exhibit "1", the Lightning Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass billed GEICO for the Glass Services and Glass Parts through 808 Auto Glass, despite the fact that the Glass Services and Glass Parts were actually provided – to the extent they were provided at all – through A&E Auto Glass in violation of the A&E Stipulation and the A&E Settlement.

. . .

21

9121674

**D.    The Fraudulent Billing Through 808 Auto Glass Prior to its Organization as a Limited Liability Company in Arizona**

93.    As set forth above, under Arizona law, an unincorporated entity is ineligible to: (i) conduct business in Arizona; and/or (ii) collect on claims for insurance reimbursement.

94.    By extension, insurers such as GEICO are not obligated pay claims submitted by or through a putative entity that is not eligible to conduct business or submit insurance claims in Arizona.

95.    808 Auto Glass previously was organized as a limited liability company in Hawaii on or about December 14, 2011.

96.    Thereafter, in April 2019, following the A&E Defendants' execution of the A&E Stipulation, the Lightning Capital Defendants and the A&E Defendants recruited Pacheco to begin using 808 Auto Glass as a vehicle through which they could submit fraudulent billing to GEICO for the Glass Services and Glass Parts secretly provided – to the extent they were provided at all – by the A&E Defendants.

97.    However, Pacheco did not cause 808 Auto Glass to be organized as a limited liability company in Arizona until June 18, 2019 – two months after 808 Auto Glass began to submit large amounts of insurance billing to GEICO.

98.    Between April 10, 2019 and June 18, 2019, the A&E Defendants, the Lightning Capital Defendants, Pacheco, and 808 Auto Glass submitted hundreds of claims to GEICO for reimbursement for Glass Services and Glass Parts purportedly provided through 808 Auto Glass, and GEICO paid the Lightning Capital Defendants, Pacheco, and 808 Auto Glass more than $100,000.00 in reliance on those charges, despite the fact that – during this period -- 808 Auto Glass was not yet organized in Arizona, and therefore was not eligible to conduct business in Arizona or to collect insurance reimbursement.

99.    All of the billing submitted through 808 Auto Glass between April 10, 2019 and June 18, 2019 falsely represented that 808 Auto Glass was a valid Arizona limited

9121674

1  liability company, and therefore was eligible to conduct business and collect insurance

2  reimbursement in Arizona.

3      100.  In fact, between April 10, 2019 and June 18, 2019, 808 Auto Glass was not

4  a valid Arizona limited liability company, and therefore was not eligible to conduct

5  business and collect insurance reimbursement in Arizona.

6  **E.  808 Auto Glass Did Not Obtain Assignments of Benefits from Insureds and   Therefore Lacked Standing to Collect Reimbursement from GEICO**

7

8      101.  In order to seek reimbursement directly from GEICO for purported Glass

9  Services and Glass Parts, a glass shop must be in possession of a valid assignment of the

10 Insured's insurance benefits.

11     102.  By extension, a glass shop that is not in possession of a valid assignment of

12 benefits from an Insured does not have standing to seek reimbursement from insurers

13 such as GEICO for Glass Services or Glass Parts.

14     103.  In the claims for Glass Services and Glass Parts identified in Exhibit "1",

15 the Lightning Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass

16 routinely falsely represented that 808 Auto Glass was in possession of assignments of

17 benefits from the Insureds to whom 808 Auto Glass falsely purported to provide Glass

18 Services and Glass Parts, and therefore had standing to seek reimbursement from GEICO.

19     104.  In fact, in virtually all of the claims identified in Exhibit "1",  808 Auto

20 Glass was never in possession of valid assignments of benefits from Insureds, and

21 therefore lacked standing to seek reimbursement from GEICO for the putative Glass

22 Services and Glass Parts.

23     105.  For example:

24  (i)  On or about April 22, 2019, the Lightning Capital Defendants, the A&E
25       Defendants, Pacheco, and 808 Auto Glass submitted a claim to GEICO
26       through 808 Auto Glass, purportedly for Glass Services and Glass Parts
             provided to an Insured named RH. The claim falsely represented that RH
             had assigned his insurance benefits to 808 Auto Glass. In fact, RH never
27       assigned his insurance benefits to 808 Auto Glass, and 808 Auto Glass
             therefore lacked standing to seek reimbursement in the first instance.

28 . . .

THORPE SHWER, P.C.

9121674

(ii)     On or about April 29, 2019, the Lightning Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass submitted a claim to GEICO through 808 Auto Glass, purportedly for Glass Services and Glass Parts provided to an Insured named JS. The claim falsely represented that JS had assigned his insurance benefits to 808 Auto Glass. In fact, JS never assigned his insurance benefits to 808 Auto Glass, and 808 Auto Glass therefore lacked standing to seek reimbursement in the first instance.

(iii)    On or about May 18, 2019, the Lightning Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass submitted a claim to GEICO through 808 Auto Glass, purportedly for Glass Services and Glass Parts provided to an Insured named MO. The claim falsely represented that MO had assigned his insurance benefits to 808 Auto Glass. In fact, MO never assigned his insurance benefits to 808 Auto Glass, and 808 Auto Glass therefore lacked standing to seek reimbursement in the first instance.

(iv)    On or about May 28, 2019, the Lightning Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass submitted a claim to GEICO through 808 Auto Glass, purportedly for Glass Services and Glass Parts provided to an Insured named JL. The claim falsely represented that JL had assigned his insurance benefits to 808 Auto Glass. In fact, JL never assigned his insurance benefits to 808 Auto Glass, and 808 Auto Glass therefore lacked standing to seek reimbursement in the first instance.

(v)     On or about June 1, 2019, the Lightning Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass submitted a claim to GEICO through 808 Auto Glass, purportedly for Glass Services and Glass Parts provided to an Insured named MT. The claim falsely represented that MT had assigned his insurance benefits to 808 Auto Glass. In fact, MT never assigned his insurance benefits to 808 Auto Glass, and 808 Auto Glass therefore lacked standing to seek reimbursement in the first instance.

(vi)    On or about June 10, 2019, the Lightning Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass submitted a claim to GEICO through 808 Auto Glass, purportedly for Glass Services and Glass Parts provided to an Insured named CU. The claim falsely represented that CU had assigned his insurance benefits to 808 Auto Glass. In fact, CU never assigned his insurance benefits to 808 Auto Glass, and 808 Auto Glass therefore lacked standing to seek reimbursement in the first instance.

(vii)   On or about June 20, 2019, the Lightning Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass submitted a claim to GEICO through 808 Auto Glass, purportedly for Glass Services and Glass Parts provided to an Insured named DM. The claim falsely represented that DM had assigned his insurance benefits to 808 Auto Glass. In fact, DM never assigned his insurance benefits to 808 Auto Glass, and 808 Auto Glass therefore lacked standing to seek reimbursement in the first instance.

(viii)  On or about June 25, 2019, the Lightning Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass submitted a claim to GEICO through 808 Auto Glass, purportedly for Glass Services and Glass Parts provided to an Insured named SC. The claim falsely represented that SC had assigned his insurance benefits to 808 Auto Glass. In fact, SC never assigned his insurance benefits to 808 Auto Glass, and 808 Auto Glass therefore lacked standing to seek reimbursement in the first instance.

THORPE SHWER, P.C.

(ix)    On or about June 25, 2019, the Lightning Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass submitted a claim to GEICO through 808 Auto Glass, purportedly for Glass Services and Glass Parts provided to an Insured named MP. The claim falsely represented that MP had assigned his insurance benefits to 808 Auto Glass. In fact, MP never assigned his insurance benefits to 808 Auto Glass, and 808 Auto Glass therefore lacked standing to seek reimbursement in the first instance.

(x)     On or about June 28, 2019, the Lightning Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass submitted a claim to GEICO through 808 Auto Glass, purportedly for Glass Services and Glass Parts provided to an Insured named BG. The claim falsely represented that BG had assigned his insurance benefits to 808 Auto Glass. In fact, BG never assigned his insurance benefits to 808 Auto Glass, and 808 Auto Glass therefore lacked standing to seek reimbursement in the first instance.

(xi)    On or about June 28, 2019, the Lightning Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass submitted a claim to GEICO through 808 Auto Glass, purportedly for Glass Services and Glass Parts provided to an Insured named KK. The claim falsely represented that KK had assigned his insurance benefits to 808 Auto Glass. In fact, KK never assigned his insurance benefits to 808 Auto Glass, and 808 Auto Glass therefore lacked standing to seek reimbursement in the first instance.

(xii)   On or about June 29, 2019, the Lightning Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass submitted a claim to GEICO through 808 Auto Glass, purportedly for Glass Services and Glass Parts provided to an Insured named CM. The claim falsely represented that CM had assigned his insurance benefits to 808 Auto Glass. In fact, CM never assigned his insurance benefits to 808 Auto Glass, and 808 Auto Glass therefore lacked standing to seek reimbursement in the first instance.

(xiii)  On or about July 1, 2019, the Lightning Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass submitted a claim to GEICO through 808 Auto Glass, purportedly for Glass Services and Glass Parts provided to an Insured named JC. The claim falsely represented that JC had assigned his insurance benefits to 808 Auto Glass. In fact, JC never assigned his insurance benefits to 808 Auto Glass, and 808 Auto Glass therefore lacked standing to seek reimbursement in the first instance.

(xiv)   On or about July 1, 2019, the Lightning Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass submitted a claim to GEICO through 808 Auto Glass, purportedly for Glass Services and Glass Parts provided to an Insured named MG. The claim falsely represented that MG had assigned his insurance benefits to 808 Auto Glass. In fact, MG never assigned his insurance benefits to 808 Auto Glass, and 808 Auto Glass therefore lacked standing to seek reimbursement in the first instance.

106.    These are only representative examples. In virtually all of the claims identified in Exhibit "1", the Lightning Capital Defendants, the A&E Defendants, Pacheco, and 808 Auto Glass falsely represented that 808 Auto Glass was in possession

25

9121674

1    of assignments of benefits from the Insureds to whom 808 Auto Glass falsely purported

2    to provide Glass Services and Glass Parts, and therefore had standing to seek

3    reimbursement from GEICO, when in fact it was not.

4         **F.    The Fraudulent Billing Submitted Through 808 Auto Glass for Glass
               Services and Glass Parts Never Legitimately Provided in the First
5               Instance**

6         107.    As set forth above, in the A&E Auto Glass Action, GEICO alleged, among

7    other things, that the A&E Defendants had used A&E Auto Glass as a vehicle to submit

8    thousands of fraudulent insurance claims to GEICO for Glass Services and Glass Parts

9    that had never been legitimately provided in the first instance.

10        108.    In keeping with the fact that the A&E Defendants had submitted thousands

11   of fraudulent insurance claims to GEICO through A&E Auto Glass for Glass Services

12   and Glass Parts that had never been legitimately provided in the first instance, E. Solheim

13   and A. Solheim invoked the Fifth Amendment privilege against self-incrimination in

14   response to allegations to that effect in the A&E Auto Glass Action.

15        109.    To perpetuate their scheme, the A&E Defendants, in coordination with the

16   Lightning Capital Defendants, recruited Pacheco and 808 Auto Glass to continue to

17   engage in substantially the same fraudulent activity as the A&E Defendants had been

18   engaged in prior to the A&E Auto Glass Action.

19        110.    In particular, the A&E Defendants, the Lightning Capital Defendants,

20   Pacheco, and 808 Auto Glass used 808 Auto Glass as a vehicle to submit hundreds of

21   fraudulent insurance claims to GEICO that – in addition to the fraudulent conduct

22   outlined above – falsely represented that some legitimate Glass Services and Glass Parts

23   were provided, when in many cases they were not.

24        111.    When 808 Auto Glass would falsely purport to provide Glass Services and

25   Glass Parts, the A&E Defendants, the Lightning Capital Defendants, Pacheco, and 808

26   Auto Glass would generate an invoice for the supposed services which they submitted to

27   GEICO in support of their claim for reimbursement.

28

THORPE SHWER, P.C.

9121674

THORPE SHWER, P.C.

1    112.   The invoices submitted by the A&E Defendants, the Lightning Capital

2   Defendants, Pacheco, and 808 Auto Glass through 808 Auto Glass virtually always

3   falsely represented that 808 Auto Glass had installed a replacement windshield, as well as

4   attendant moldings, clips, and fasteners.

5    113.   However, in the claims identified in Exhibit "1", in order to maximize the

6   amount of fraudulent billing they could submit to GEICO through 808 Auto Glass, the

7   A&E Defendants, the Lightning Capital Defendants, Pacheco, and 808 Auto Glass

8   routinely fabricated the Glass Parts charges attendant to their putative charges for Glass

9   Services.

10    114.   In keeping with the fact that the A&E Defendants, the Lightning Capital

11   Defendants, Pacheco, and 808 Auto Glass routinely fabricated their charges for Glass

12   Parts attendant to the Glass Services, the Defendants routinely generated two separate

13   invoices in connection with each putative service:

14   (i)    one invoice –provided to Insureds, but not to GEICO – which did not
           include or make reference to any charges for Glass Parts attendant to the
15         Glass Services; and

16   (ii)   a second invoice –submitted to GEICO – which included additional charges
           for Glass Parts that were never installed or provided in the first instance.
17

18    115.   For example:

19   (i)    On April 29, 2019, an Insured named AA appeared at A&E Auto Glass'
           shop for a windshield replacement on his GEICO-insured vehicle. The
20         windshield replacement was performed – to the extent it was performed at
           all – by A&E Auto Glass. At the conclusion of the services, the A&E
21         Defendants provided AA with an invoice, which included charges for the
           windshield and attendant adhesives, but which did not make reference to
22         the installation of a replacement windshield molding. However, on April
           30, 2019, the A&E Defendants, the Lightning Capital Defendants, Pacheco,
23         and 808 Auto Glass submitted an invoice to GEICO through 808 Auto
           Glass seeking reimbursement for not only the items listed on the invoice
24         provided to AA, but an additional $91.39 for the installation of a new
           molding, despite the fact that no molding had been installed.
25
     (ii)   On May 2, 2019, an Insured named CA appeared at A&E Auto Glass' shop
26         for a windshield replacement on her GEICO-insured vehicle. The

27         windshield replacement was performed – to the extent it was performed at
           all – by A&E Auto Glass. At the conclusion of the services, the A&E
28         Defendants provided CA with an invoice, which included charges for the

9121674

windshield and attendant adhesives, but which did not make reference to any charges for any molding or fastener. However, on May 6, 2019, the A&E Defendants, the Lightning Capital Defendants, Pacheco, and 808 Auto Glass submitted an invoice to GEICO through 808 Auto Glass seeking reimbursement for not only the items listed on the invoice provided to CA, but $52.66 in additional charges for a molding and fastener, despite the fact that no molding or fastener had been installed or used.

(iii)  On May 3, 2019, an Insured named AO appeared at A&E Auto Glass' shop for a windshield replacement on his GEICO-insured vehicle. The windshield replacement was performed – to the extent it was performed at all – by A&E Auto Glass. At the conclusion of the services, the A&E Defendants provided AO with an invoice, which included charges for the windshield and attendant adhesive, but which did not make any reference to a charge for windshield filler. However, on May 7, 2019, the A&E Defendants, the Lightning Capital Defendants, Pacheco, and 808 Auto Glass submitted an invoice to GEICO through 808 Auto Glass seeking reimbursement for not only the items listed on the invoice provided to AO, but an additional $73.15 charge for windshield filler, despite the fact that no windshield filler had been used.

(iv)  On May 10, 2019, an Insured named DW appeared at A&E Auto Glass' shop for a windshield replacement on her GEICO-insured vehicle. The windshield replacement was performed – to the extent it was performed at all – by A&E Auto Glass. At the conclusion of the services, the A&E Defendants provided DW with an invoice, which included charges for the windshield and attendant adhesives, but which did not make reference to the installation of a replacement windshield molding. However, on May 13, 2019, the A&E Defendants, the Lightning Capital Defendants, Pacheco, and 808 Auto Glass submitted an invoice to GEICO through 808 Auto Glass seeking reimbursement for not only the items listed on the invoice provided to DW, but an additional $110.09 for the installation of a new molding, despite the fact that no molding had been installed.

(v)  On May 10, 2019, an Insured named MG appeared at A&E Auto Glass' shop for a windshield replacement on her GEICO-insured vehicle. The windshield replacement was performed – to the extent it was performed at all – by A&E Auto Glass. At the conclusion of the services, the A&E Defendants provided MG with an invoice, which included charges for the windshield and attendant adhesives, but which did not make reference to any charges for any molding or fastener. However, on May 10, 2019, the A&E Defendants, the Lightning Capital Defendants, Pacheco, and 808 Auto Glass submitted an invoice to GEICO through 808 Auto Glass seeking reimbursement for not only the items listed on the invoice provided to MG, but $52.66 in additional charges for a molding and fastener, despite the fact that no molding or fastener had been installed or used.

(vi)  On May 13, 2019, an Insured named KK appeared at A&E Auto Glass' shop for a windshield replacement on her GEICO-insured vehicle. The windshield replacement was performed – to the extent it was performed at all – by A&E Auto Glass. At the conclusion of the services, the A&E

Defendants provided KK with an invoice, which included charges for the windshield, adhesives, and tint strips, but which did not make reference to the installation of a replacement windshield molding. However, on May 14,

THORPE SHWER, P.C.

9121674

2019, the A&E Defendants, the Lightning Capital Defendants, Pacheco, and 808 Auto Glass submitted an invoice to GEICO through 808 Auto Glass seeking reimbursement for not only the items listed on the invoice provided to KK, but an additional $74.04 for the installation of a new molding, despite the fact that no molding had been installed.

(vii)   On May 18, 2019, an Insured named TS appeared at A&E Auto Glass' shop for a windshield replacement on his GEICO-insured vehicle. The windshield replacement was performed – to the extent it was performed at all – by A&E Auto Glass. At the conclusion of the services, the A&E Defendants provided TS with an invoice, which included charges for the windshield, adhesives, and tint strips, but which did not make reference to charges for a replacement windshield molding or clip. However, on May 20, 2019, the A&E Defendants, the Lightning Capital Defendants, Pacheco, and 808 Auto Glass submitted an invoice to GEICO through 808 Auto Glass seeking reimbursement for not only the items listed on the invoice provided to TS, but an additional $317.09 for a new molding and clip, despite the fact that no molding or clip had been installed or used.

(viii)  On May 28, 2019, an Insured named TV appeared at A&E Auto Glass' shop for a windshield replacement on his GEICO-insured vehicle. The windshield replacement was performed – to the extent it was performed at all – by A&E Auto Glass. At the conclusion of the services, the A&E Defendants provided TV with an invoice, which included charges for the windshield and attendant adhesives, but which did not make reference to any charges for molding or windshield clips. However, on May 29, 2019, the A&E Defendants, the Lightning Capital Defendants, Pacheco, and 808 Auto Glass submitted an invoice to GEICO through 808 Auto Glass seeking reimbursement for not only the items listed on the invoice provided to TV, but $215.36 in additional charges for a replacement molding and a windshield clip, despite the fact that no molding or clip had been installed or used.

(ix)    On May 29, 2019, an Insured named MP appeared at A&E Auto Glass' shop for a windshield replacement on her GEICO-insured vehicle. The windshield replacement was performed – to the extent it was performed at all – by A&E Auto Glass. At the conclusion of the services, the A&E Defendants provided MP with an invoice, which included charges for the windshield and attendant adhesives, but which did not make reference to any charges for molding or windshield clips. However, on May 30, 2019, the A&E Defendants, the Lightning Capital Defendants, Pacheco, and 808 Auto Glass submitted an invoice to GEICO through 808 Auto Glass seeking reimbursement for not only the items listed on the invoice provided to MP, but $47.92 in additional charges for a replacement molding and a windshield clip, despite the fact that no molding or clip had been installed or used.

(x)     On June 4, 2019, an Insured named MP appeared at A&E Auto Glass' shop for a windshield replacement on his GEICO-insured vehicle. The windshield replacement was performed – to the extent it was performed at all – by A&E Auto Glass. At the conclusion of the services, the A&E

Defendants provided MP with an invoice, which included charges for the windshield and attendant adhesives, but which did not make reference to any charges for any molding or clips. However, on June 5, 2019, the A&E

Thorpe Shwer, P.C.

9121674

Defendants, the Lightning Capital Defendants, Pacheco, and 808 Auto Glass submitted an invoice to GEICO through 808 Auto Glass seeking reimbursement for not only the items listed on the invoice provided to MP, but $75.11 in additional charges for a molding and clip, despite the fact that no molding or clips had been installed or used.

(xi)    On June 8, 2019, an Insured named AG appeared at A&E Auto Glass' shop for a windshield replacement on his GEICO-insured vehicle. The windshield replacement was performed – to the extent it was performed at all – by A&E Auto Glass. At the conclusion of the services, the A&E Defendants provided AG with an invoice, which included charges for the windshield and attendant adhesives, but which did not make reference to any charges for molding or windshield clips. However, on June 10, 2019, the A&E Defendants, the Lightning Capital Defendants, Pacheco, and 808 Auto Glass submitted an invoice to GEICO through 808 Auto Glass seeking reimbursement for not only the items listed on the invoice provided to AG, but $250.70 in additional charges for a replacement molding and a windshield clip, despite the fact that no molding or clip had been installed or used.

(xii)   On June 10, 2019, an Insured named PD appeared at A&E Auto Glass' shop for a windshield replacement on his GEICO-insured vehicle. The windshield replacement was performed – to the extent it was performed at all – by A&E Auto Glass. At the conclusion of the services, the A&E Defendants provided PD with an invoice, which included charges for the windshield and attendant adhesives, but which did not make reference to any charges for any molding, pads, or clips. However, on June 11, 2019, the A&E Defendants, the Lightning Capital Defendants, Pacheco, and 808 Auto Glass submitted an invoice to GEICO through 808 Auto Glass seeking reimbursement for not only the items listed on the invoice provided to PD, but $192.70 in additional charges for moldings, pads, and a windshield clip, despite the fact that no moldings, pads, or clip had been installed or used.

(xiii)  On June 13, 2019, and Insured named TS appeared at A&E Auto Glass' shop for a windshield replacement on his GEICO-insured vehicle. The windshield replacement was performed – to the extent it was performed at all – by A&E Auto Glass. At the conclusion of the services, the A&E Defendants provided TS with an invoice, which included charges for the windshield and attendant adhesives and tinting, but which did not make reference to any charges for any molding or clip. However, on June 18, 2019, the A&E Defendants, the Lightning Capital Defendants, Pacheco, and 808 Auto Glass submitted an invoice to GEICO through 808 Auto Glass seeking reimbursement for not only the items listed on the invoice provided to TS, but $47.92 in additional charges for a molding and clip, despite the fact that no molding or clip had been installed or used.

(xiv)   On June 14, 2019, an Insured named BJ appeared at A&E Auto Glass' shop for a windshield replacement on his GEICO-insured vehicle. The windshield replacement was performed – to the extent it was performed at all – by A&E Auto Glass. At the conclusion of the services, the A&E Defendants provided BJ with an invoice, which included charges for the windshield and attendant adhesives, but which did not make reference to any charges for any molding or fastener. However, on June 18, 2019, the A&E Defendants, the Lightning Capital Defendants, Pacheco, and 808

9121674

Auto Glass submitted an invoice to GEICO through 808 Auto Glass seeking reimbursement for not only the items listed on the invoice provided to BJ, but $57.36 in additional charges for a molding and fastener, despite the fact that no molding or fastener had been installed or used.

(xv)    On June 15, 2019, an Insured named MM appeared at A&E Auto Glass' shop for a windshield replacement on her GEICO-insured vehicle. The windshield replacement was performed – to the extent it was performed at all – by A&E Auto Glass. At the conclusion of the services, the A&E Defendants provided MM with an invoice, which included charges for the windshield and attendant adhesives, but which did not make reference to the installation of a replacement windshield molding. However, on June 17, 2019, the A&E Defendants, the Lightning Capital Defendants, Pacheco, and 808 Auto Glass submitted an invoice to GEICO through 808 Auto Glass seeking reimbursement for not only the items listed on the invoice provided to MM, but an additional $110.09 for the installation of a new molding, despite the fact that no molding had been installed.

116.    These are only representative examples. In the claims identified in Exhibit "1", the A&E Defendants, the Lightning Capital Defendants, Pacheco, and 808 Auto Glass simply fabricated the Glass Parts charges attendant to their putative charges for Glass Services in order to maximize the fraudulent billing they could submit to GEICO through 808 Auto Glass.

### III.    The Fraudulent Claims the Defendants Submitted or Caused to be Submitted to GEICO

117.    To support the fraudulent charges, the Defendants systematically submitted or caused to be submitted hundreds of claims to GEICO through 808 Auto Glass for Glass Services and Glass Parts that were secretly provided – to the extent they were provided at all – through A&E Auto Glass in violation of the A&E Stipulation and the A&E Settlement.

118.    All of the claims for Glass Services and Glass Parts identified in Exhibit "1" were submitted by the Defendants via electronic transmission from Arizona to GEICO's third-party administrator in Columbus, Ohio.

119.    The claims that the Defendants submitted or caused to be submitted to GEICO were false and misleading in the following material respects:

(i)    The claims submitted by the Defendants through 808 Auto Glass involved charges for fraudulent and illusory Glass Services and Glass Parts that were never performed and/or provided in the first instance;

(ii)     The claims submitted by the Defendants through 808 Auto Glass falsely represented that 808 Auto Glass provided the Glass Parts and Glass Services; and

(iii)    The claims submitted by the Defendants were submitted through 808 Auto Glass, which never actually provided the Glass Services and Glass Parts, never obtained assignments of insurance benefits from the Insureds, and was ineligible to seek reimbursement from GEICO for the claims in the first instance.

## IV.   The Defendants' Fraudulent Concealment and GEICO's Justifiable Reliance

120.    The Defendants were legally and ethically obligated to act honestly and with integrity in connection with their performance of the purported Glass Services, Glass Parts, and their submission of charges to GEICO.

121.    To induce GEICO to promptly pay the fraudulent charges for the Glass Services and Glass Parts, the Defendants systemically concealed their fraud and have gone to great lengths to accomplish this concealment.

122.    Specifically, the Defendants used 808 Auto Glass as a vehicle to submit hundreds of claims for reimbursement to GEICO for Glass Parts and Glass Services secretly provided – to the extent they were provided at all – through A&E Auto Glass in violation of the A&E Stipulation and the A&E Settlement. Each such charge falsely represented that 808 Auto Glass provided the Glass Parts and Glass Services, and that 808 Auto Glass had valid assignments of benefits from GEICO Insureds.

123.    Additionally, the Defendants submitted claims through 808 Auto Glass which falsely represented that 808 Auto Glass was in possession of valid assignments of benefits from the Insureds to whom the Glass Services and Glass Parts purportedly were provided, when in fact they were not.

124.    Moreover, the Defendants submitted claims through 808 Auto Glass which falsely represented that 808 Auto Glass was authorized to conduct business and eligible to collect reimbursement in Arizona, when in fact it was not.

125.    GEICO is under statutory and contractual obligations to promptly and fairly process claims within 30 days. The facially-valid documents submitted to GEICO in support of the fraudulent charges at issue, combined with the material misrepresentations

THORPE SHWER, P.C.

1   described above, were designed to and did cause GEICO to rely upon them. As a result,

2   GEICO has incurred damages of more than $100,000.00.

3       126.   Based upon the Defendants' material misrepresentations and other

4   affirmative acts to conceal their fraudulent conduct from GEICO, GEICO did not

5   discover and could not reasonably have discovered that its damages were attributable to

6   fraud until shortly before it filed this Complaint.

**FIRST CAUSE OF ACTION**
Against 808 Auto Glass
**(Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)**

7

8

9       127.   GEICO incorporates, as though fully set forth herein, each and every

10   allegation in paragraphs 1 through 128 above.

11      128.   There is an actual case in controversy between GEICO and 808 Auto Glass

12   regarding more than $160,000.00 in fraudulent claims for the purported Glass Services and

13   Glass Parts that has been submitted to GEICO.

14      129.   808 Auto Glass has no right to receive payment for any pending claims

15   submitted to GEICO because the claims misrepresented that 808 Auto Glass provided the

16   underlying services, when in fact it did not.

17      130.   808 Auto Glass has no right to receive payment for any pending claims

18   submitted to GEICO because the claims misrepresented that 808 Auto Glass was in

19   possession of valid assignments of benefits from the Insureds, when in fact it was not.

20      131.   808 Auto Glass has no right to receive payment for pending claims submitted

21   to GEICO because, between April 10, 2019 and June 18, 2019, 808 Auto Glass was not

22   eligible to conduct business or collect insurance reimbursement in Arizona.

23      132.   808 Auto Glass has no right to receive payment for any pending bills

24   submitted to GEICO because the bills misrepresented the specific Glass Services and Glass

25   Parts that A&E Auto purported to provide the Insureds.

26      133.   808 Auto Glass has no right to receive payment for any pending claims

27   submitted to GEICO because the claims misrepresented that the billed-for services were

28   legitimately provided, when in fact they were not.

THORPE SHWER, P.C.

9121674

134.   808 Auto Glass has no right to receive payment for any pending claims submitted to GEICO because the claims were submitted in violation of the A&E Stipulation and the A&E Settlement.

135.   Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that 808 Auto Glass has no right to receive payment for any pending claims submitted to GEICO.

**SECOND CAUSE OF ACTION**
**Against Pacheco, the Lightning Capital Defendants, and the A&E Defendants**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

136.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 128 above.

137.   808 Auto Glass is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

138.   Pacheco, the Lightning Capital Defendants, and the A&E Defendants have knowingly conducted and/or participated, directly or indirectly, in the conduct of 808 Auto Glass' affairs through a pattern of racketeering activity consisting of repeated violations of the federal wire fraud statute, 18 U.S.C. § 1343, based upon the use of the wires in interstate commerce to submit or cause to be submitted hundreds of fraudulent claims for Glass Services and Glass Parts on a continuous basis seeking insurance payments under GEICO insurance policies that 808 Auto Glass was never entitled to receive because: (i) 808 Auto Glass never provided the underlying Glass Services and Glass Parts; (ii) 808 Auto Glass was never in possession of valid assignments of benefits from the Insureds to whom it purported to provide services; (iii) the Glass Services and Glass Parts were, in many cases, never legitimately provided in the first instance; and (iv) 808 Auto Glass was not authorized to conduct business or collect insurance reimbursement in Arizona. A representative sample of the fraudulent bills and corresponding facsimiles submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "1".

THORPE SHWER, P.C.

9121674

139.   808 Auto Glass' business is racketeering activity, inasmuch as the enterprise exists solely for the purpose of submitting fraudulent charges to Arizona automobile insurers.   The predicate acts of wire fraud are the regular way in which Pacheco, the Lightning Capital Defendants, and the A&E Defendants operate 808 Auto Glass, inasmuch as 808 Auto Glass was never eligible to bill GEICO or other automobile insurers for the Glass Services and Glass Parts, and the acts of wire fraud therefore are essential in order for 808 Auto Glass to function.   Furthermore, the intricate planning required to carry out and conceal the predicate acts of wire fraud implies a threat of continued criminal activity, as does the fact that attempts to collect on the fraudulent billing submitted through 808 Auto Glass continue to the present day.

140.   808 Auto Glass is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by 808 Auto Glass in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent billing of Glass Services and Glass Parts.

141.   GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $100,000.00 pursuant to the fraudulent claims submitted through 808 Auto Glass.

142.   By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

**THIRD CAUSE OF ACTION**
**Against Pacheco, the Lightning Capital Defendants, and the A&E Defendants**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

143.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 128 above.

144.   808 Auto Glass is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

THORPE SHWER, P.C.

9121674

145.   Pacheco, the Lightning Capital Defendants, and the A&E Defendants are employed by and/or associated with the A&E Auto enterprise.

146.   Pacheco, the Lightning Capital Defendants, and the A&E Defendants knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the 808 Auto Glass enterprise's affairs through a pattern of racketeering activity consisting of repeated violations of the federal wire fraud statute, 18 U.S.C. § 1343, based upon the use of the wires in interstate commerce to submit or cause to be submitted hundreds of fraudulent claims for Glass Services and Glass Parts on a continuous basis seeking insurance payments under GEICO insurance policies that 808 Auto Glass was never entitled to receive because: (i) 808 Auto Glass never provided the underlying Glass Services and Glass Parts; (ii) 808 Auto Glass was never in possession of valid assignments of benefits from the Insureds to whom they purported to provide services; (iii) the Glass Services and Glass Parts were, in many cases, never legitimately performed in the first instance; and (iv) 808 Auto Glass was not authorized to conduct business or collect insurance reimbursement in Arizona. A representative sample of the fraudulent bills and corresponding claim submissions submitted to GEICO using wires in interstate commerce that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the charts annexed hereto as Exhibit "1". Each such wire transmission was made by Defendants in furtherance of the wire fraud scheme.

147.   Pacheco, the Lightning Capital Defendants, and the A&E Defendants knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other automobile insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

148.   GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $100,000.00 pursuant to the fraudulent bills submitted through the 808 Auto Glass enterprise.

THORPE SHWER, P.C.

9121674

1    149.   By reason of its injury, GEICO is entitled to treble damages, costs, and

2    reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court

3    deems just and proper.

### FOURTH CAUSE OF ACTION
**Against Pacheco, the Lightning Capital Defendants, and the A&E Defendants
(Violation of A.R.S. § 13-2314-04)**

6    150.   GEICO incorporates, as fully set forth herein, each and every allegation in

7    paragraphs 1 through 128 above.

8    151.   In furtherance of the fraudulent claims identified through the date of this

9    Complaint that are described, in part, in the chart annexed hereto as Exhibit "1", the

10   Defendants submitted or caused to be submitted hundreds of fraudulent invoices and

11   supporting paperwork in order to obtain reimbursement from GEICO.

12   152.   When the claims for reimbursement were submitted to GEICO, the

13   Defendants knew that the submission of invoices and supporting paperwork contained

14   false and misleading information concerning facts material to GEICO's determination to

15   pay the claims, including misrepresentations that: (i) 808 Auto Glass had provided the

16   underlying Glass Services and Glass Parts to Insureds when, in fact, the Glass Services

17   and Glass Parts had been provided – to the extent they were provided at all  –  through

18   A&E Auto Glass; (ii) 808 Auto Glass was in possession of valid assignments of benefits

19   from the Insureds, when in fact it was not; (iii) 808 Auto Glass was eligible to conduct

20   business and collect insurance reimbursement in Arizona, when in fact it was not; (iv) the

21   underlying Glass Services and Glass Parts were legitimately provided in the first

22   instance, when, in many instances, they were not.

23   153.   These knowing and intentional acts constitute a pattern of criminal activity,

24   in that said acts constitute insurance fraud in violation of A.R.S. §§ 20-463(A)(1)(c), 20-

25   463(A)(5), 20-463.01(A)(1)(a), 20-463.01(A)(1)(c), and 20-463.01(A)(4)(a).

26   154.   This pattern of unlawful activity resulted in GEICO issuing payment for the

27   reimbursement of hundreds of claims for which it otherwise would not have provided

28   reimbursement.

THORPE SHWER, P.C.

37

9121674

155.    Defendants' pattern of unlawful activity has caused GEICO to sustain damages of at least $100,000.00.

156.    By reason of Defendants' conduct, GEICO is also entitled to recover threefold the actual damages it actually sustained, reasonable attorney's fees, and court costs pursuant to A.R.S. § 13-2314-04.

**FIFTH CAUSE OF ACTION**
**Against all Defendants**
**(Common Law Fraud)**

157.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 128 above.

158.    The Defendants intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts in the course of their submission of fraudulent claims to GEICO for reimbursement.

159.    The false and fraudulent statements of material fact and acts of fraudulent concealment include the misrepresentations that: (i) 808 Auto Glass had provided the underlying Glass Services and Glass Parts to Insureds when, in fact, the Glass Services and Glass Parts had been provided – to the extent they were provided at all  –  through A&E Auto Glass; (ii) 808 Auto Glass was in possession of valid assignments of benefits from the Insureds, when in fact it was not; (iii) 808 Auto Glass was eligible to conduct business and collect insurance reimbursement in Arizona, when in fact it was not; and (iv) the underlying Glass Services and Glass Parts were legitimately provided in the first instance, when, in many instances, they were not.

160.    The Defendants intentionally made the above-described false and fraudulent statements and concealed material facts from GEICO in a calculated effort to mislead GEICO and induce GEICO to pay for reimbursement of non-reimbursable claims.

161.    GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $100,000.00 in the reimbursement of claims made by 808 Auto Glass.

Thorpe Shwer, P.C.

38

9121674

162.    The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

163.    Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**SIXTH CAUSE OF ACTION**
**Against all Defendants**
**(Unjust Enrichment)**

164.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 128 above.

165.    As set forth above, the Defendants have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

166.    When GEICO paid the invoices provided by the Defendants submitted for reimbursement, it reasonably believed that: (i) the Glass Parts, Glass Services were provided to the Insureds through 808 Auto Glass; (ii) 808 Auto Glass was in possession of valid assignments of benefits from the Insureds to whom it purportedly had provided services; (iii) 808 Auto Glass was authorized to conduct business and receive insurance reimbursement in Arizona; and (iv) the underlying Glass Services and Glass Parts were legitimately provided in the first instance.

167.    Absent the misrepresentations by the Defendants, GEICO would not have issued the payment for the claims identified in Exhibit "1".

168.    Therefore, GEICO's payment of the claims submitted by the Defendants through 808 Auto Glass resulted in the Defendants being unjustly enriched, as the Defendants received payment for claims they submitted to GEICO, which should not have been paid because (i) 808 Auto Glass never provided the underlying Glass Services and Glass Parts, which were instead provided – to the extent they were provided at all – through A&E Auto Glass in violation of the A&E Stipulation and the A&E Settlement; (ii) 808 Auto Glass was never in possession of valid assignments of benefits from the

9121674

1  Insureds to whom it purported to provide services; (iii) the Glass Services and Glass Parts

2  were, in many cases, never legitimately performed in the first instance; and (iv) 808 Auto

3  Glass was not authorized to conduct business or collect insurance reimbursement in

4  Arizona.

5     169.   The Defendants' enrichment was at GEICO's expense, as GEICO paid the

6  Defendants, through 808 Auto Glass more than $100,000.00.

7     170.   By reason of the above, the Defendants have been unjustly enriched in an

8  amount to be determined at trial, but in no event less than $100,000.00.

9  **SEVENTH CAUSE OF ACTION**
**Against the A&E Defendants**
10 **(Breach of Contract)**

11    171.   GEICO incorporates, as though fully set forth herein, each and every

12 allegation in paragraphs 1 through 128 above.

13    172.   In addition to the fraudulent activity described herein, which involved many

14 misrepresentations that were collateral and extraneous to the A&E Stipulation and the

15 A&E Settlement, the A&E Defendants also breached the A&E Stipulation and the A&E

16 Settlement.

17    173.   The A&E Stipulation and the A&E Settlement are each valid and enforceable

18 contracts between the A&E Defendants and GEICO.

19    174.   GEICO fully performed its obligations under the A&E Stipulation and the

20 A&E Settlement.

21    175.   The A&E Defendants breached the A&E Stipulation and the A&E

22 Settlement as set forth herein.

23    176.   As the result of the A&E Defendants' breach of the A&E Stipulation and the

24 A&E Settlement, GEICO has been damaged in an amount to be determined at trial, but in

25 event less than $120,000.00.

26 . . .

27 . . .

28 . . .

THORPE SHWER, P.C.

9121674

40

THORPE SHWER, P.C.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### EIGHTH CAUSE OF ACTION
**Against Pacheco, 808 Auto Glass, and the Lightning Capital Defendants**
**(Tortious Interference With Contract)**

177.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 128 above.

178.   The A&E Stipulation and the A&E Settlement are each valid and enforceable contracts between the A&E Defendants and GEICO.

179.   GEICO fully performed its obligations under the A&E Stipulation and the A&E Settlement.

180.   Pacheco, 808 Auto Glass, and the Lightning Capital Defendants knew that the A&E Defendants had entered into the A&E Stipulation and the A&E Settlement with GEICO.

181.   Pacheco, 808 Auto Glass, and the Lightning Capital Defendants induced and caused the A&E Defendants' breach of the A&E Stipulation and the A&E Settlement by repeatedly submitting or causing to be submitted claims to GEICO for Glass Services and Glass Parts, all of which falsely represented that the underlying services were provided by 808 Auto Glass, when in fact they were provided – to the extent they were provided at all – by the A&E Defendants in violation of the A&E Settlement and the A&E Stipulation.

182.   Pacheco, 808 Auto Glass, and the Lightning Capital Defendants' interference was improper and intended to cause and induce the A&E Defendants' breach of the A&E Stipulation and the A&E Settlement.

183.   Accordingly, by virtue of Pacheco, 808 Auto Glass, and the Lightning Capital Defendants' interference causing and inducing of the A&E Defendants breach of the A&E Stipulation and the A&E Settlement, GEICO has been damaged in an amount to be determined at trial, but in event no less than $100,000.00.

### JURY DEMAND

184.   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.

9121674

THORPE SHWER, P.C.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**WHEREFORE**, Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. demand that a Judgment be entered in their favor:

A.     On the First Cause of Action against 808 Auto Glass, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that 808 Auto Glass has no right to receive payment for any pending bills submitted to GEICO;

B.     On the Second Cause of Action against Pacheco, the Lightning Capital Defendants, and the A&E Defendants, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $100,000.00, together with treble damages, costs, interest and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c);

C.     On the Third Cause of Action against Pacheco, the Lightning Capital Defendants, and the A&E Defendants, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $100,000.00, together with treble damages, costs, interest and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(d);

D.     On the Fourth Cause of Action against Pacheco, the Lightning Capital Defendants, and the A&E Defendants, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $100,000.00, together with treble damages, costs, interest and reasonable attorneys' fees pursuant to A.R.S. § 13-2314-04;

E.     On the Fifth Cause of Action Against all Defendants, compensatory damages in an amount to be determined at trial but in excess of $100,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

F.     On the Sixth Cause of Action Against all Defendants, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $100,000.00, plus costs, interest and such other and further relief as this Court deems just and proper.

. . .

. . .

9121674

G.      On the Seventh Cause of Action Against the A&E Defendants, permanent injunctive relief and more than $100,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper.

H.      On the Eighth Cause of Action Against Pacheco, 808 Auto Glass, and the Lightning Capital Defendants, permanent injunctive relief and more than $100,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper.

Dated: October 7, 2019

THORPE SHWER, P.C.

By:  /s/ William L. Thorpe
        William L. Thorpe
        Jamie Gill Santos
        3200 N. Central Ave., Ste. 1560
        Phoenix, Arizona  85012
        (602) 682-6100

RIVKIN RADLER LLP

By:  /s/ Barry I. Levy (with permission)
        Barry I. Levy (to be admitted *pro hac vice*)
        Max Gershenoff (to be admitted *pro hac vice*)
        Steven Henesy (to be admitted *pro hac vice*)
        Michael Vanunu (to be admitted *pro hac vice*)
        926 RXR Plaza
        Uniondale, New York 11556
        (516) 357-3000

*Counsel for Plaintiffs, Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co.*

THORPE SHWER, P.C.

9121674

43